

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Virginia**

BARRY F. JONES,

    Plaintiff,

v.                              Civil Action No. 3:13cv714

HCA (HOSPITAL CORPORATION
OF AMERICA),

    Defendant.


**MEMORANDUM OPINION**

The matter comes before the Court on the MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(b)(6) (Docket No. 6) filed by Parallon Enterprises, LLC (misnamed in the Complaint as HCA). The defendant also challenges the Court's subject matter jurisdiction over Jones' Title VII and ADA retaliation claims, though the motion does not make the challenge under Rule 12(b)(1). The plaintiff's Complaint appears to allege: (1) a violation of the Equal Pay Act, 42 U.S.C. § 206; (2) a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2; (3) failure to accommodate and wrongful discharge under the Americans with Disabilities Act, 42 U.S.C. § 12112; (4) retaliation under Title VII, 42 U.S.C. § 2000e-3(a); (5) retaliation under the ADA, 42 U.S.C. § 12203; and (6) a Bowman action for wrongful discharge under Virginia common law. For the

reasons set forth below, the allegations of the Complaint are insufficient to state a claim. Therefore, the MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Docket No. 6) will be granted.

## BACKGROUND

Barry Jones began working as a pharmacist at the Central Order Entry Pharmacy ("the Pharmacy") on June 15, 2009. Hospital Corporation of America ("HCA") and Parallon Business Solutions ("PBS") are named as the defendants. An entity named Parallon Enterprises, LLC ("Parallon") filed an Answer to the Complaint and asserted therein that HCA and PBS were erroneously named as defendants. It appears, however, that Parallon is the correct defendant and that it, through HCA, owns the Pharmacy.

Jones recites that he accepted employment at the Pharmacy pursuant to an offer letter, which contained the terms of compensation. Specifically, the Pharmacy offered Jones a "bi-weekly salary equivalent to the same or similar pay as any Pharmacist under the Equal Pay Act." (Complaint at 2, ll.3-5.) Jones' salary was based on 70 hours of work over each bi-weekly period.

After "several months" on the job, Jones began to suspect that his salary was not equal to other similarly situated pharmacists, and he questioned a co-worker, a white male, on this point. After learning that his co-worker earned a salary

2

equivalent to 80 hours of work over each bi-weekly period (70 work hours), while Jones was paid for only 70 hours, Jones brought the apparent discrepancy to his manager's attention. (Id. at 2, 11.9-12.) The manager, Kirk Frey, explained that the difference could be attributed to the different methods of calculating salary.

Jones avers that he subsequently began to receive "excessive negative performance reviews." (Id. at 2, 1.17.) In addition, he alleges that the Pharmacy began refusing to accept, as non-productive, hours that he logged, assigning tasks that he could not credit towards his production quotas, refusing his requests to work from home, and threatening termination. Jones indicates that performance reviews were closely connected to meeting production quotas. (Id. at 2, 11.7, 17-20.)

According to the Complaint, Jones continued to complain, and as he complained, the "negativity escalated to harassment." (Id. at 2, 11.20-21.) He received pamphlets containing information about sexually transmitted diseases and a rendering of himself as a gorilla. (Id. at 2, 11.21-23.) He alleges that the work environment became highly stressful and led to depression, shortness of breath, insomnia, an inability to focus, and anxiety.

In March 2012, Jones requested medical leave under the Federal Medical Leave Act ("FMLA"), but he was initially denied

3

leave and benefits. (Id. at 3, 11.8-9.) After submitting additional paperwork, he was permitted temporary unpaid leave. Around this time, Jones discovered that medications prescribed for his depression and anxiety had triggered the recurrence of a pre-existing metabolic condition first diagnosed during his military service. (Id. at 3, 11.13-18.)

Jones discussed these matters with Franka Bowman (an employee in the Human Resources Department), Mary Scott-Garrett (his new manager), and Noel Hodges (the Division Supervisor), but these discussions did not satisfy his concerns. On June 13, 2012, Jones filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which alleged that the Pharmacy, its management, and its staff had created a hostile work environment in violation of Title VII.

At some point thereafter, Jones returned to work. In October 2012, he again met with Bowman, Scott-Garrett, and Hodges, who told Jones that he would be held to his production quotas. On October 24, 2012, he requested an opportunity to work from home, which was apparently granted. (Id. at 3, 1.20 & 4, 11.7-9.) During this time, he continued to receive "negative" emails regarding his performance, which he believed were retaliatory. He complained about the emails to his team leader, Renee Bauserman. Thereafter, Bowman, Scott-Garrett, and Hodges called Jones into another meeting, during which, Hodges directed

4

Jones to report to the jobsite and stop working from home. (Id. at 4, ll.2-9.) Jones states that, at some point, he began working "off the clock" to meet his quotas, but Scott-Garrett informed him that he could not do so. On February 28, 2013, the Pharmacy terminated Jones' employment for working off the clock in violation of company policy. (Id. at 4, ll.9-22.)

On April 1, 2013, Jones filed a second EEOC charge alleging that he had been subject to retaliation for filing the initial EEOC charge and complaining about what he perceived to be retaliatory behavior.

**DISCUSSION**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To overcome a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint "must provide enough facts to state a claim that is plausible on its face." Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The Supreme Court has explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at

5

556). A court "will accept the pleader's description of what happened to him or her along with any conclusions that can reasonably be drawn therefrom." 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 1998). However, a court need not accept conclusory allegations encompassing the legal effect of the pleaded facts. Iqbal, 556 U.S. at 678; Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) ("[W]e are not so bound by the plaintiff's legal conclusions, since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint.").

When evaluating Rule 12(b)(6) motions to dismiss, courts first reject conclusory allegations that amount to a mere "formulaic recitation of the elements" of a claim. Iqbal, 556 U.S. at 680-81. Second, courts conduct a "context-specific" analysis to determine whether the plaintiff's allegations "plausibly suggest an entitlement to relief." Id. at 681. Finally, courts hold pro se complaints "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)).

## 1. Count I: Alleged Violation of the Equal Pay Act

The Complaint fails to allege that Jones received less pay because of his sex as required to state a claim under the federal Equal Pay Act. The Act prohibits an employer from

6

discriminating "between employees on the *basis of sex* by paying
wages to employees . . . at a rate less than the rate at which
[it] pays wages to employees of the *opposite sex* . . . for equal
work on jobs the performance of which requires equal skill,
effort, and responsibility, and which are performed under
similar working conditions." 29 U.S.C. § 206(d)(1).

The Complaint only alleges that Jones believed that his
white, male co-worker was paid a higher salary even though he
and Jones held the same positions. Although the Court liberally
construes pro se complaints, "[t]he Court is not required to
'conjure up questions never squarely presented' in the
complaint." Brice v. Jenkins, 489 F. Supp. 2d 538, 541 (E.D. Va.
2007) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278
(4th Cir. 1985)). Therefore, the Court must dismiss this Count
as a matter of law. See Houck v. Va. Polytechnic Inst. & State
Univ., 10 F.3d 204, 206 (4th Cir. 1993).

## 2.  Count II: Alleged Hostile Work Environment in Violation of Title VII

Title VII makes it unlawful "to discriminate against any
individual with respect to his compensation, terms, conditions,
or privileges of employment, because of such individual's race,
color, religion, sex, or national origin." 42 U.S.C. § 2000e-
2(a)(1). "The phrase 'terms, conditions, or privileges of
employments' evinces a congressional intent to strike at the

7

entire spectrum of disparate treatment . . . in employment, which includes requires people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations omitted).

To state a claim under Title VII for a hostile work environment, a plaintiff must allege that: "1) [he] experienced unwelcome harassment; 2) the harassment was based on [his] gender, race, or age; 3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Bass makes clear that a plaintiff need not plead "specific facts establishing a prima facie case" at this stage of the proceedings. Id. at 764. However, a complaint must allege sufficient facts to state the elements of the claim. Id. at 765. Moreover, while the Court remains mindful that "district courts must be especially solicitous of [pro se] civil rights plaintiffs," Brice, 489 F. Supp. 2d at 541 (internal quotation marks omitted) (quoting Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), the alleged facts must possess sufficient "heft" to push claims "across the line from conceivable to plausible." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256, 262 (4th Cir. 2009).

At this stage, the Court may accept the Jones' allegations that the workplace environment was "negative" or unwelcome. Further, although it is not explicitly stated within the four corners of the Complaint, the Court may note that the plaintiff belongs to a protected class.[1] The second element also requires Jones to allege facts sufficient to allow the reasonable inference that the unwelcome harassment he experienced was based on his race. See Monk v. Potter, 723 F. Supp.2d 860, 881 (E.D. Va. 2010). The Complaint does not specifically assert facts that connects the "negativity" to Jones' race. Rather, the alleged facts might suggest a causal connection between the "negativity" and Jones' complaints about his pay, or the facts might suggest a causal connection between the "negativity" and Jones' work performance. (Complaint, at 2, ll.17-20 & 3, ll.1-5.) However,

---

[1] Jones refers to his June 13, 2012 EEOC charge, and he later submitted it as part of his response to the Defendant's Motion to Dismiss. Jones therein notes that he believes he was discriminated against "based on [his] race (Black/multiracial of African descent) in violation of Title VII." Therefore, the Defendant's argument that the plaintiff failed to establish the second element of a Title VII claim cannot succeed. See Stoney Glen, LLC v. S. Bank & Trust Co., 944 F. Supp. 2d 460, 464 (E.D. Va. 2013) ("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment. However, there are a number of exceptions to this rule. Specifically, a court 'may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these documents is not disputed' . . . .") (quoting Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

9

in Jones' EEOC charge, which he references in his Complaint, he does indicate that he believes the pamphlets were in reference to his wife's native country (the Philippines). Jones also alleges that someone anonymously sent him a drawing that depicted him as a gorilla.

Under the third element, the analysis contains a "subjective and objective assessment of the conduct." Martin v. Scott & Stringfellow, Inc., 643 F. Supp. 2d 770, 787 (E.D. Va. 2009). In other words, "[t]he environment must be perceived by the victim as hostile or abusive, and that perception must be reasonable." Ziskie v. Mineta, 547 F.3d 220, 227 (4th Cir. 2008). At this stage, the Court must accept that Jones found the conduct subjectively severe or pervasive. To determine whether the conduct was objectively severe or pervasive, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. No single factor is dispositive, but "[e]mployment discrimination laws are not designed to create a general civility code for the workplace." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008). "[I]solated incidents of hostile or abusive language are typically insufficient to support a hostile work environment claim." Martin v. Scott & Stringfellow, Inc.,

643 F. Supp. 2d 770, 787 (E.D. Va. 2009) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

Jones' Complaint lists only the two specific instances of harassing conduct and also alleges that he received generally "negative" performance reviews and warnings that he would be terminated for failing to meet productivity quotas. Although the pamphlets and drawing could be fairly considered offensive, neither are particularly physically threatening, and the pamphlets are rather ambiguous. See Montano v. INOVA Health Care Servs., 2008 WL 4905982, at *3 (E.D. Va. Nov. 12, 2008) ("Courts have found the existence of racially hostile workplace based on verbal harassment only in instances where unambiguous racial epithets . . . were uttered with recurring frequency.").

Moreover, Jones provides no details about the performance reviews or warnings that shed any light into their severity or frequency, much less that they were racially motivated. Instead, he summarily asserts that the "negativity escalated to harassment." See Henderson v. Labor Finders of Va., Inc., 2013 WL 1352158, at *7 (E.D. Va. Apr. 2, 2013) (finding that plaintiff sufficiently stated a claim for hostile work environment by alleging facts indicating that he was subject "to frequent and pervasive slurs and insults based on his sex, culminating in threats of violence for continuing to work at Labor Finders" despite "numerous attempts to notify" management

11

about the alleged treatment). While a plaintiff need not list every incident in unflinching detail, the Complaint must indicate a pattern of "extremely abusive language" or otherwise pervasive conduct based on the plaintiff's race. See Miller v. Washington Workplace, Inc., 298 F. Supp. 2d 364, 375 (E.D. Va. 2004); see also Montano, 2008 WL 4905982, at *3 (dismissing complaint citing five offensive remarks over the course of the year made by five different co-workers). In this case, the Complaint sheds no light on the emails that might reveal physically threatening or abusive language.

Finally, and most problematic, Jones does not allege facts that could provide a basis for imposing liability on his employer, and therefore, he fails to plead the fourth element of his claim. An employer can be held vicariously liable for a hostile work environment if "a supervisor with immediate (or successively higher) authority over the employee" created the environment. Henderson, 2013 WL 1352158, at *6 (quoting Faragher, 524 U.S. at 807). As noted above, the Complaint does not adequately allege that the negative performance reviews or warnings regarding Jones' productivity levels were racially motivated.[2] Indeed, Jones completely omits to indicate the exact person or persons who sent the emails. As a result, the

---

[2] Jones does not even attribute the negative performance reviews or warnings to a specific supervisor.

12

Complaint does not attribute any unambiguous instances of racially motivated harassment to a supervisor. Furthermore, Jones does not allege that he reported the other, more specific instances to a supervisor or attempted to "avail [himself] of [Parallon's] preventive or remedial apparatus." Faragher, 524 U.S. at 806. Because Jones does not allege that his supervisors "knew or should have known about the harassment and failed to take effective action to stop it," his claim fails. Sunbelt Rentals, Inc., 521 F.3d at 318-19 (noting that courts should not "lightly" hold employers liable for scattered incidents); Martin, 643 F. Supp. 2d at 787.

## 3.  Count III: Wrongful Discharge and Failure to Accommodate under the Americans with Disabilities Act

To state a claim for the failure to accommodate under the ADA, a plaintiff must allege sufficient facts to permit a reasonable inference that "(1) he had a disability; (2) the defendant had notice of the disability; (3) he could perform the essential functions of his job with a reasonable accommodation; and (4) the defendant refused to make such an accommodation. Mobley v. Advance Stores Co., Inc., 842 F. Supp. 2d 886, 889 (E.D. Va. 2012) (considering motion for summary judgment); see Orne v. Christie, 2013 WL 85171, at *4 (E.D. Va. Jan. 7, 2013) (considering Rule 12(b)(6) motion).

13

First, the Court considers whether Jones had a "disability" under the ADA. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarding as having such impairment." 42 U.S.C. 12102; Reynolds, 701 F.3d at 150.

In 2008, Congress enacted the Americans with Disabilities Amendments Act ("ADAA") in response to a series of Supreme Court decisions adopting a strict construction of "disability." Summers v. Altarum Inst. Corp., 740 F.3d 325, 329 (4th Cir. 2014). The ADAA directs courts to construe the definition broadly, "to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A). To advance this "liberalized purpose," Congress instructed courts to also interpret the term "substantially limits" broadly. Id. § 12102(4)(B); Summers, 740 F.3d at 329. The EEOC has since issued valid regulations implementing the new standard. Summers, 740 F.3d at 329 ("The EEOC's interpretation—that the ADAA may encompass temporary disabilities—advances [Congress'] goal."); see 29 C.F.R. § 1630.2(j)(1).

Jones alleges that a metabolic condition called G6PD, first diagnosed during his Naval Service Career, causes shortness of breath and fatigue in the presence of medication prescribed for his depression and anxiety. His metabolic condition meets the

14

EEOC definition of "physical" impairment, 29 C.F.R. §
1630.2(h)(1) ("Any physiological disorder or condition . . . .).
Further, his depression and anxiety meet the EEOC definition of
"mental" impairment. Id. § 1630.2(h)(2). Next, the EEOC
regulations list "breathing" as a "major life activity." Thus,
the Court looks to whether Jones adequately plead sufficient
facts to allege that his condition "substantially limits" his
breathing. As the regulations make clear, "'substantially
limits' is not meant to be a demanding standard." Id. §
1630.2(j)(1)(i). A condition that is episodic may "substantially
limit" a major life activity, and mitigating measures are
irrelevant to the determination. Id. § 1630.2(j)(1)(vi)-(vii).
At this stage, keeping in mind that Congress has directed courts
to broadly construe "substantially limits," Jones has pled
sufficient facts to support a reasonable inference that his
condition is a "disability" under the ADA. See id. §
1630.2(j)(1)(iii) ("The primary object of attention in cases . .
. should be whether covered entities have complied with their
obligations and whether discrimination has occurred, not whether
an individual's impairment substantially limits a major life
activity.").

Second, Jones alleges that he requested an accommodation
and sought medical leave. Based on this allegation, the Court
may infer that Parallon had notice of his condition.

Next, the Court considers whether Jones is a "qualified individual," or in other words, "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111. The "essential functions" are those "fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(2). Jones did not set forth the "essential functions" of his job, but Parallon has not provided any case law that suggests he must at this stage. See Blackburn v. Tr. of Guilford Technical Cmty. Coll., 822 F. Supp. 2d 539, 551 (M.D.N.C. 2011) (deciding that a plaintiff need not plead the "essential functions" of the job at the motion to dismiss stage).

More significantly, Jones also failed to allege that he could perform the "essential functions" with a "reasonable accommodation." See Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995). The Complaint does not clearly set forth the order of events, but it appears that Parallon initially *granted* Jones' request for an accommodation. During that time, Jones received a number of negative emails and memos regarding his performance. He does not allege that his performance had improved or that these emails were inaccurate. See Myers, 50 F.3d at 283 ("Nothing in the text of the reasonable accommodation provisions requires an employer to wait an indefinite period for an

16

accommodation to achieve its intended effect."). In fact, Jones does not allege that *any* of the negative emails, negative performance reviews, or warnings that he received during his three and one-half years of employment with Parallon, even the emails *before* the medication triggered his metabolic condition, incorrectly represented his performance. Because the Complaint is wholly devoid of any facts that plausibly indicate that Jones could perform the essential functions of the position with or without a reasonable accommodation, his claim for failure to accommodate fails. See Iqbal, 556 U.S. at 678.

Moving to Jones' wrongful discharge claim under the ADA, a plaintiff must plead sufficient facts to permit a reasonable inference that "he was a qualified individual with a disability; he was discharged; at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and his discharge occurred under circumstances that raise a reasonable inference of wrongful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012).

Jones alleges that he did not violate any "known" policy by working off the clock, but this conclusory allegation alone cannot support his wrongful discharge claim. As explained above, Jones failed to allege that he could perform the essential functions of his position with a reasonable accommodation, and

17

therefore, he is not a "qualified individual." Moreover, his claim fails because he has provided no factual allegations supporting a reasonable inference that he was "performing his job at a level that met his employer's legitimate expectations." Id. at 150; see Iqbal, 556 U.S. at 678. As a result, the Court dismisses the wrongful discharge claim under the ADA.

4.   **Counts IV and V: Retaliation Under Title VII and the ADA**

Title VII and the ADA require plaintiffs to exhaust their administrative remedies before a court may exercise jurisdiction over their claims. In this case, Parallon argues that Jones failed to exhaust his administrative remedies, because he never filed an EEOC charge based on retaliation and never filed an EEOC charge covering alleged conduct occurring after June 13, 2012 — the date on his first EEOC charge. In response, Jones attached a copy of a second EEOC charge filed on or about April 1, 2013 to his response to Parallon's Motion to Dismiss (Docket No. 10). Even if he had not, it is "well-established . . . that a Title VII suit may include a claim that relates back to a previously filed EEOC charge." Shaw v. Aramark Mgmt. Servs. Ltd. P'ship, 903 F. Supp. 2d 413, 421 (E.D. Va. 2012) (citing Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992)).

Indeed, "charges of retaliation almost always relate back to the original EEOC charge," because "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related

18

to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Id. (internal quotation marks omitted) (quoting Nealon, 958 F.2d at 590). In this case, Jones alleges multiple instances of retaliation occurred between June 13, 2012 when he filed the first EEOC charge and August 2, 2013 when he received his right to sue letter. Therefore, the relation-back doctrine applies to Jones' Title VII claim. And, because the reasoning applies equally to the ADA retaliation claim, the Court will also apply the relation-back doctrine to Jones' ADA claim.

### A.   Title VII Retaliation

Title VII "prohibits employers from 'discriminating against any of [their] employees . . . because [the employees] ha[ve] opposed any practice made an unlawful employment practice by [Title VII], or because [the employees] ha[ve] participated in any manner in an investigation' under Title VII. Coleman v. Md. Ct. of App., 626 F.3d 187, 190 (4th Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)).

Jones has failed to allege enough facts "to raise a right to relief above the speculative level." Coleman, 626 F.3d at 190; see Robinson, 551 F.3d at 222. To state a claim for Title VII retaliation, a plaintiff must provide factual allegations showing: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected

activity and the employment action. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). The Fourth Circuit has held that employers may be held vicariously liable *only* for the discriminatory acts of their "decisionmakers." See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 410-11 (4th Cir. 2013) (internal quotation marks omitted) (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 290 (4th Cir. 2004)).

Protected activities may be classified as "participation" or "opposition." See 42 U.S.C. § 2000e-3(a); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (placing protected activities into two categories: participation and opposition). Making formal EEOC charges, testifying, assisting, or participating in an investigation are examples of participation. 42 U.S.C. § 2000e-3(a); Laughlin, 149 F.3d at 259. Making use of informal grievance procedures and speaking up against an employer's discriminatory activity are examples of "opposition." Laughlin, 149 F.3d at 259. An employee needs to only have a reasonable belief that an employment practice is unlawful before voicing his or her opposition. Ferrell v. Harris Ventures, Inc., 812 F. Supp. 2d 741, 746 (E.D. Va. 2011) (citing Jordan v. Alternative Res. Corp., 458 F.3d 332, 338 (4th Cir. 2006)). "'Employees are thus guaranteed the right to complain to their superiors about suspected violations of Title VII.'"

Ferrell v. Harris Ventures, Inc., 812 F. Supp. 2d 741, 746 (E.D.
Va. 2011) (quoting Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333
F.3d 536, 543-44 (4th Cir. 2003)). The Complaint clearly states
that Jones filed an EEOC charge, which alleged violations of
Title VII and the ADA. As Laughlin noted, filing an EEOC charge
is protected activity. 149 F.3d at 259.

Next, the penultimate paragraph of the Complaint alleges
that Hodges, the Division Supervisor, revoked his accommodation
and directed him to no longer work from home. Jones also alleges
that Parallon discharged him for a purported violation of
company policy. At this stage, the Court may accept that these
are "materially adverse" employment actions. See Burlington N. &
Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (holding that
a "reasonable employee would have found the [adverse employment
action] materially adverse, 'which in this context means it well
might have dissuaded a reasonable worker from making or
supporting a charge of discrimination.'") (quoting Rochon v.
Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Finally, a plaintiff must plead that his or her protected
activity constituted the "but-for" cause of the materially
adverse employment action by the employer. Univ. Tex. Sw. Med.
Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). Little is required
to plead causation. See Karpel v. Inova Health Sys. Servs., 134
F.3d 1222, 1229 (4th Cir. 1998). Though it is far from

21

conclusive, temporal proximity between the protected activity and the adverse action often is sufficient for a "prima facie case of causality." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). Significantly, the decisionmaker's knowledge of the protected activity is "essential to a retaliation claim." Francisco v. Verizon S. Inc., 756 F. Supp. 2d 705, 725-26 (E.D. Va. 2010) (internal quotation marks omitted) (quoting Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)).

Despite the low pleading standard, Jones does not allege sufficiently specific facts that would permit this Court to make a "reasonable inference" of causation. Iqbal, 556 U.S. at 678. First, Jones does not allege that Hodges knew of the EEOC charge when he made his decision to revoke Jones' ability to work from home. See Francisco, 756 F. Supp. 2d at 723. Second, although Jones alleges that Hodges made the decision to revoke Jones' accommodation as "punishment" for stating that "a barrage of negative emails" was retaliatory, the Complaint includes no facts to support this conclusory allegation.[3] For instance, as noted above, Jones does not allege that the emails criticizing

---

[3] Moreover, it is unclear from the Complaint whether Jones' statements about the emails would be protected activity under Title VII, because the Complaint proffers no facts about the substance of Jones' statements or the emails.

his productivity were false. Indeed, Jones' Complaint reflects that he received critical performance reviews both before and after receiving permission to work from home, which makes it impossible to reasonably infer that his complaints were the "but for" cause of the emails or his termination. Nassar, 133 S. Ct. at 2534.

Finally, Jones does not actually articulate who was the "decisionmaker" responsible for his termination and does not allege that the responsible individual even knew of the EEOC charge. The Complaint indicates that Bowman informed Jones that he would receive a "self-explanatory" packet, but the Complaint only notes that Bowman worked in the Human Resources Department and does not provide any job title or facts about her involvement in the decision to terminate Jones' employment. Further, Jones makes only a conclusory allegation that the firing was retaliatory. He fails to provide sufficient facts to plausibly state a "but for" relationship between the EEOC charge, which was filed in June 2012, and his discharge eight months later in February 2013.

## B. ADA Retaliation

The ADA also prohibits employers from retaliating against employees for engaging in conduct protected by the ADA, such as filing an EEOC complaint or requesting an arguably reasonable accommodation. A Society Without a Name v. Virginia, 655 F.3d

23

342, 350 (4th Cir. 2011); Orne v. Christie, 2013 WL 85171, at *4
(E.D. Va. Jan. 7, 2013). The elements of an ADA retaliation
claim mirror the elements of Title VII retaliation claim.
"Plaintiffs must allege (1) that they engaged in protected
conduct; (2) suffered an adverse action, and (3) that a causal
link exists between the protected conduct and the adverse
action." A Society Without a Name, 655 F.3d at 350.

As discussed above, Jones has failed to adequately plead a
causal link between his EEOC charge and the employment actions
adverse to him. Moreover, Jones does not plead a causal link
between his request for an accommodation, which was originally
granted, and any adverse action. Because his allegations fail to
"raise a right to relief above a speculative level," the Court
dismisses the ADA retaliation claim.

## 5.  The Bowman Wrongful Discharge Claim

Jones fails to state a Bowman claim for wrongful discharge
under Virginia law. (Complaint, at 4, 11.15-22.) In Bowman v.
State Bank of Keysville, the Supreme Court of Virginia created a
wrongful discharge claim for terminations that violate Virginia
public policy as expressed in a state statute. As this Court has
recognized, a plaintiff seeking to state a Bowman claim "must
identify a Virginia statute that the employer-defendant violated
by terminating the plaintiff." Storey v. Patient First Corp.,
207 F. Supp. 2d 431, 450 (E.D. Va. 2002) (citing Lawrence

Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98-99 (1996)).
Indeed, a Bowman claim must have its "root in a *state* statute."
Id. (quoting McCarthy v. Texas Instruments, Inc., 999 F. Supp.
823, 829 (E.D. Va. 1998)).

The Supreme Court of Virginia has explained "the very
limited circumstances under which it has concluded that
plaintiffs have stated cognizable Bowman claims." Id. Those
circumstances may be categorized into three classes:

> (1) where an employer violated a policy
> enabling the exercise of an employee's
> statutorily create right; (2) where the
> public policy violated by the employer was
> explicitly expressed in the statute and the
> employee was clearly a member of that class
> of persons directly entitled to the
> protection enunciated by the public policy;
> and (3) where the discharge was based on the
> employee's refusal to engage in a criminal
> act.

Id. (citing Rowan v. Tractor Supply Co., 263 Va. 209, 213-14
(2002)).

Although Jones alleges that he was discharged "for seeking
fair treatment under the law," he does not identify any specific
Virginia statutes upon which he could base a Bowman claim.
Therefore, he has not satisfied the threshold requirement to
identify a statute expressing Virginia public policy and his
claim fails.

## CONCLUSION

For the foregoing reasons, the MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Docket No. 6) will be granted.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 21, 2014